IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:08-1264-JFA |
| ) | |
| v. ) | MEMORANDUM |
| ) | OPINION AND ORDER |
| CHARLIE BELLS, JR. ) | |
| _____ ) | |

This matter is before the court on the defendant's third *pro se* motion for a reduction in his sentence (ECF No. 206) pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A).[2] Seeking compassionate release, the defendant states that his current medical problems, coupled with the ongoing COVID-19 pandemic, constitute extraordinary and compelling reasons for his immediate release. He further attests that his elderly father has had a major stroke and that he needs to be released to care for his father at home. The defendant has also moved the court for various remedies which this court will address later in this order.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] The defendant's prior *ex parte* motions for compassionate release were denied without prejudice because the defendant had not exhausted his administrative remedies (ECF Nos. 195, 200, 204).

of the defendant's release. The defendant did not reply to the government's response.[3]

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the

---

[3] The defendant states that he was unable to file an opposition to the government's response because he was in Kentucky attending court on a Writ from November 18, 2021 to April 21, 2022. However, the defendant filed numerous motions with the court during that time period including a motion for appointment of counsel, a motion to compel an *Alford* plea, motions for copies, and a motion to stay.

federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (I) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found

that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's

4

term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

### I. *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control

(CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In his sealed motion (ECF No. 206), the defendant contends that he suffers from major vision and health issues, COPD, and other conditions. He also states that he is bipolar, has PTSD, is legally blind in his right eye and has a deteriorating left eye "from a staff assault in 2016." The defendant is currently 45 years old.

The government notes that the defendant's BOP medical records confirm that he suffers from various physical and cognitive conditions, including Antisocial Behavior, Type 2 diabetes, asthma, a seizure disorder, acid reflux, hypertension, neuralgia, hyperlipidemia, vision problems, and several nail and skin conditions. At a May 2021 medical visit, the defendant reported that he had a history of anxiety, bipolarism, and PTSD resulting in night terrors. The defendant was taking medication for these ailments and informed the medical

provider that he felt those conditions were well-controlled with no reported concerns.

The government also notes that the BOP medical records indicate that the defendant has a history of self-harm, manifesting in poisoning by other drugs, medicaments, and biological substances. While medical records indicate that this behavior was in remission, the defendant was treated for an overdose of NSAIDs[4] on June 15, 2021.

The defendant's medical records indicate that his seizure disorder began in 1993 when he was shot in the head. The defendant reported in May 2021 that he had not had a seizure in 7 months and was taking medication that most likely helped to control the seizures. The defendant has had asthma since childhood which is well-controlled on current therapy, and he was undergoing treatment for Type 2 diabetes.

The medical records also indicate that the defendant tested positive for COVID-19 in October 2020 and that he received his first dose of the Moderna vaccine on March 30, 2021.

The government argues that while the defendant has a long list of ailments and medical conditions, on the whole those conditions are controlled and appropriately managed and treated at the BOP and that these conditions are not so serious as to substantially diminish his ability to care for himself.[5]

---

[4] An NSAID is a non-steroidal anti-inflammatory drug which blocks the production of certain body chemicals that cause inflammation.

[5] The PSR (ECF No. 76 at ¶ 85), prepared in October 2009 prior to the defendant's sentencing, noted that when asked to describe his health, the defendant advised that he was in good shape and had no physical ailments. He indicated that he suffered with asthma as a child, but no longer takes medications for this condition.. He denied the need for any additional medical treatment.

The defendant does not allege, and the medical records do not show, that his medical conditions have worsened during his incarceration. However, this court views the defendant's medical conditions of asthma and Type 2 diabetes as medical conditions that might be exacerbated by COVID-19. On this record, the court determines that the defendant has, in fact, demonstrated an extraordinary and compelling reason for consideration of his release.

This determination, however, does not end the inquiry. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors. This review will also consider the defendant's post-sentencing conduct while incarcerated, and any other arguments advanced by the defendant in his memoranda.

*Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense*. The defendant was the sole individual named in a 5-count Indictment in the District of South Carolina. In June 2009, pursuant to a written Plea Agreement, the defendant pleaded guilty to Count 1 of the Indictment charging him with conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base or "crack,' in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.[6]

---

[6] The remaining Counts 2 through 5 involved separate instances of possession with intent to distribute and distribution of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) or (C).

At the January 4, 2010 sentencing, the Presentence Report (PSR) (ECF No. 76) determined the defendant's applicable drug weight was 424,100 kilograms of marijuana equivalent, which represented a converted drug weight of 145,500 grams of cocaine, and 19,750 grams of crack that the defendant was responsible for.

The PSR specified the total offense level was 40 and the defendant's criminal history category was VI. This yielded a Guideline range of 360 months to Life.

At sentencing, the court imposed a 7-level downward departure pursuant to U.S.S.G. § 5K1.1 in return for the defendant's substantial assistance to law enforcement authorities. Thus, with a new total offense level of 33, and a criminal history category of VI, the Guideline range became 235 to 293 months.

On January 4, 2010, this court sentenced the defendant to 235 months imprisonment (the low end of the new Guideline range after the departure) and 5 years of supervised release.

The defendant appealed his judgment and commitment. However, the Fourth Circuit Court of Appeals dismissed the appeal in its mandate issued in June 2010 (ECF No. 90).

In September 2012, this court dismissed as untimely the defendant's motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 117). This court's order was affirmed by the Fourth Circuit Court of Appeals. The defendant's second § 2255 motion was denied by this court in June 2017 because the defendant had not received permission from the Fourth Circuit Court of Appeals to file a second or successive petition (ECF No. 169).

In September 2015, this court denied the defendant's motion for a reduction of his sentence made pursuant to Amendment 782 of the U.S. Sentencing Guidelines (ECF No. 157). As noted earlier, the defendant received a 7-level departure at sentencing pursuant to U.S.S.G. § 5K1.1. Under Amendment 782, the defendant's new amended guideline range would have been 235 to 293 months. Because his current sentence was only 235 months (which was lower than the proposed amended Guideline range), this court determined that a reduction was not appropriate.

In August 2019, this court denied the defendant's motion for a reduction of his sentence in light of § 404(b) of the First Step Act as it relates to crack cocaine offenses and retroactive application of the Fair Sentencing Act of 2010. During its review, the court calculated the base offense level at 38, but it did not include a 2-level addition for use of a firearm, a 3-level addition for role in the offense, or a 3-level reduction for acceptance of responsibility. Ultimately, the defendant's total offense level was determined to be 40. Despite denying a reduction to the defendant's custodial sentence, the court did reduce the defendant's term of supervised release from 5 to 4 years (ECF No. 179).

The defendant is presently incarcerated at the U.S. Penitentiary in Thomson, Illinois. He is scheduled to be released in July 2025.

2. *History and Characteristics of the Defendant*. The defendant is currently 45 years old. He was born in Sumter, South Carolina and reported a normal childhood with no abuse. He moved out of his family home at 13 years of age. He has no living siblings. He is single

and has never been married. He has fathered six children from six different mothers.

The defendant completed the 9th grade of high school and has prior employment experience as a construction and landscape laborer.

He has an extensive adult criminal record which consists of, but is not limited to, convictions for shoplifting, interfering with police, petty larceny, fraudulent check, unlawful carrying of a weapon, assault and battery, and multiple counts of criminal domestic violence. However, he has never been required to serve a sentence of more than one year.

*Post-Sentencing Conduct*

Commendably, the defendant obtained his GED and has worked hard to improve his personal skills while incarcerated as revealed by numerous certificates of completion of various classes while in prison. The defendant states in one of his filings that he has been accepted to the RDAP at the BOP, but this has not been confirmed by the government.

In assessing whether a defendant deserves a sentence reduction under the First Step Act, the court must review the totality of the record. That must include the defendant's disciplinary record in this case, which is lamentable. Indeed, the defendant's disciplinary record includes no less than 40 violations committed by him while incarcerated and 13 of those violations were in the last 3 years.[7] Significantly, none of these violations involved

---

[7] Some of the charges include refusing to obey an order, threatening bodily harm, assaulting without serious injury, destroying property, possessing unauthorized items, possessing a dangerous weapon, disruptive conduct, phone abuse, interfering with security devices, refusing work, fighting with another person, tattooing or self mutilation, making a sexual proposal/threat, possessing drugs/alcohol, lying or falsifying statement, and ingestion of medication. There were numerous
(continued...)

multiple charges for an event occurring on a single day. They all occurred on separate dates and involved discreet misconduct by the defendant.

     3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. Suffice it to say that this court considers the defendant's crimes to be substantial.

     4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

     5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

     6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion.

     7. *Need to Avoid Unwarranted Disparity*. The defendant was the sole defendant in this case. His imposed sentence was and is in line with similarly situated defendants.

---

     [7](...continued)
violations involving the threat of bodily harm and assault, as well as refusals to obey orders or work.

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time. The defendant was convicted of his participation in a conspiracy to distribute a substantial amount of crack cocaine. He also admitted that he had possessed firearms while involved in drug activity and directed the activities of at least one other individual in furtherance of his drug activities. Based on his own admissions, the defendant was responsible for the distribution of at least 145.5 kilograms of powder cocaine and 19.75 kilograms of crack cocaine.

Moreover, as his disciplinary records attest, the defendant has shown an inability to comply with the law and prison rules while incarcerated at the BOP.

II. *Home Care for Family Member*

The defendant also asserts that his desire to be home to care for his father who has had a major stroke is a factor that this court should consider with regard to his motion for compassionate release. The defendant does not advise the court whether or not his mother is still living and what care arrangements his father has with his mother or other relatives. Although the court is sympathetic to his desire to care for his father, the defendant's case presents no unusual factors with regard to family relationships such that an order of immediate release is appropriate. The court finds no extraordinary and compelling reason for consideration of the defendant's release on this basis.

### III. *Motion for Appointment of Counsel*

The defendant has filed a motion for appointment of counsel (ECF No. 219). As an initial matter, there is no general constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012); cf. 18 U.S.C. § 3006A (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings).

The defendant has demonstrated numerous times that he is capable of requesting compassionate release (and other modifications of his sentence or motions) without the assistance of counsel, and the defendant has not otherwise established that the interests of justice require appointment of counsel in these circumstances.

The motion for appointment of counsel is denied (ECF No. 219).

### IV. *Motion for Copies*

The defendant has made numerous requests for copies. He states that he is a "federal inmate on sentencing pretrial awaiting sentencing and/or appealing the final judgment of sentencing and/or preparing to file an appeal and/or habeas relief via § 2255 and/or § 3252 and/or Rule 60(b)." The court has reviewed the docket and finds no other civil or criminal actions pending in this District except for the present motion for compassionate release and

motions discussed herein.

In Paragraph 15 of his Plea Agreement, the defendant waived all rights to records pertaining to the investigation or prosecution of this case under the FOIA or the Privacy Act of 1974.

The court further notes that defendant is not precluded from filing a motion merely because he does not have documents from his case. Indeed, post-judgment motions are frequently filed without the benefit of transcripts or other documents. If the defendant is interested in receiving specific transcripts or documents, he may contact the Clerk who will then advise the defendant of the cost of the copies which must be paid up-front and in full to the Clerk.

The defendant's motion for copies is denied (ECF No. 218).

## V.  *Motion to Stay*

Within his motion for appointment of counsel (ECF No. 219) and in a separate motion to stay (ECF No. 216), the defendant asks this court to stay his motion or hold it in abeyance due to "newly discovered evidence" on the grounds of "Congress and the President will make a decision on U.S.S.G., 55% possibility of change in November 2022." It appears that the defendant is relying upon the so-called EQUAL Act, a bill now pending in Congress which would eliminate the remaining 18 to 1 disparity between crack cocaine and powder cocaine. The EQUAL Act is a bill pending in Congress that has not been enacted into law.   If and when the Act is passed and enacted into law in the future, the defendant may file a motion

for the court to review at such time.

The defendant's motion to stay is denied without prejudice (ECF No. 216).

VI. *Motion to Compel Alford Plea*

In his motion filed April 7, 2022 (ECF No. 221), the defendant requests a mishmash of relief relating to compelling an Alford plea "affixed with a Rule 11(c)(1)(A) or (c) Conditional Plea;" appointment of counsel; motion to compel pursuant to Rule 404(b), Rule 702, Rule 16, FRE 801(d)(2), 18 U.S.C. § 3582 and Rule 8(a)(2). He also seeks numerous discovery documents from his criminal case which has been closed since the Judgment was entered in his criminal case in January 2010. To begin with, the Plea Agreement in this case did not call for a so-called "Alford" plea and the defendant may not force the prosecution to accept such a plea. The remainder of this portion of the defendant's motion to compel refers to an assortment of rules and statutes and the defendant does not attempt to relate them to his case.

It appears the defendant wishes for this court to comb the record in this case "to consider any grounds for relief, that may come within any future and/or pending U.S. Sentencing Guidelines changes, within November 2022, before said date herein and/or after said date pass by U.S. Congress & President and/or President Executive Orders." The defendant also asks the court to consider relief under the Second Chance Act and the First Step Act.

This "shotgun" approach by the defendant offers no compelling reason for relief and, in many respects, repeats arguments the defendant has made in earlier motions that have been previously rejected by this court. The motion to compel (ECF No. 221) is denied.

### VII. *Motion to Reconsider*

In his "motion to reconsider" filed July 5, 2022 (ECF No. 222), the defendant has included what appears to be an amended motion for compassionate release, reiterating his request for release to care for his elderly father; that he has mental health and physical disorders; that he is legally blind in his right eye; and that his sight is very impaired. He also contends that he has been determined by the Director of the BOP not to be a danger to the safety of any other person or the community. On page 10 of the document, the defendant has signed the amended motion, but it has an incomplete date of "___/___/20."

Also attached to his motion is a copy of a State High School Equivalency Diploma dated January 2012 from the Maine Department of Education. On that copy is a handwritten note where the defendant states that there is "great misunderstanding of petitioner's activities while within prison." He also states that he has assisted the government in convicting a known domestic terrorist and criminals from many parts of the world. He also appears to request that his sentence should be lowered due to his true and actual drug weights of cocaine and crack sold and not accredited to his case.

Finally, the defendant complains that he is being deprived and discriminated against because he is transgender. He indicates that he has already requested a court order allowing

17

his name to be changed and registered to "Felisha T.S. Thunder Hawk" and also "Dr. Charlie Buddha Bells, Jr." He complains that he went to Kentucky and never received the full reduction due to errors. He mentions the reopening of his civil suits, however, a review of this District's docket reveals no civil suits pending. It is possible that he is referring to a lawsuit in the Central District of California which he notes in his motion.

The court has carefully reviewed the defendant's seemingly amended motion and considered any supplemental issues relating to his original motion for compassionate release. However, with regard to the defendant's complaints of his conditions of confinement and allegations of discrimination, such issues are more appropriately brought before the Warden in charge of the defendant's custody. Likewise, claims of unreciprocated cooperation should be addressed with the Assistant United States Attorneys in various other Districts handling those matters.

The motion for reconsideration (ECF No. 222) is denied.

## CONCLUSION

As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions. Even so, the defendant's release at this time is not appropriate in light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein.

For the foregoing reasons, the motion for compassionate release (ECF No. 206) is respectfully denied.[8]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

September 12, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[8] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")